2016-2170 NexLearn v. Allen. Mr. Vickrey. Thank you. My name is Paul Vickrey, I represent NexLearn. NexLearn and Allen are direct competitors and that's relevant to two issues before the court today. In 2009, Allen was interested in NexLearn's next generation SimWriter simulation program. And it approached NexLearn about the product, said it was interested in possibly weaving it into its product line, executed in NDA for purposes of accessing the trial version of the SimWriter, which was not yet public. Just to be clear, this is a case appealed to us from a dismissal for lack of specific jurisdiction. Are you alleging that these back and forth discussions before a patent ever issued are relevant to the question of specific jurisdiction? Yes, we do, Your Honor. Now, how? For minimum contacts for specific jurisdiction, the Supreme Court has been quite clear that they have to be contacts that are what cause the claim. And I don't see how back and forth exchanges before there's ever a patent in existence could cause infringement. It's not the communications back and forth. It was the accessing of the trial version of the software that we maintain and alleged in the complaint enabled Allen to copy SimWriter. And hence, even though there wasn't infringement at the time because the patent had not yet issued, it had been applied for. And eventually, when the patent issued, Allen is infringing. And it's infringing because it copied the software. When it had access to the trial version, it accessed that software in Kansas and had agreed in the NDA, not just the NDA, but there were two different agreements between the parties. The NDA provided for the application of Kansas law, a factor that the Supreme Court has said is relevant, not dispositive. Or a breach of contract action. Correct. But the parties also, Allen also, agreed to the end user license agreement by clicking through, and we made credentials available for Allen to access the program. And by clicking through, it agreed that any dispute arising out of or relating to the agreement or the product must be brought in Wichita, Kansas. And the various access that we know Allen made to our product, our trial version of our product. Just to be clear, I don't remember the EULA saying any cause of action related to the product. I thought it said arising out of or related to the agreement. Am I misremembering what the contract says? Your Honor, it says, I'll quote it. Why don't you tell me where I can see the agreement? I believe the agreement appears at JA212. Is there a particular place you'd like me to look? Well, yes, the choice of law provision 18, paragraph 18 of the EULA, also quoted in the district court's opinion. Oh, I see. The agreement and any disputes arising out of or related to this agreement or the product shall be governed by the law of the state of Kansas. So, yes, it says that. And it goes on to say that any dispute arising out of or related to this agreement or the product must be brought exclusively in a court sitting in Wichita, Kansas. And we allege in the complaint that it was this activity, accessing our trial version of SimRider before it was even released, but before the patent issued, was a foundational activity that resulted in the copying that occurred here. And eventually when the patent issued, there's infringement. There's infringement because the product that they created that infringes was actually developed based on its access to our trial program. And we say that by that activity, by agreeing to the EULA, that in and of itself subjects Allen to jurisdiction in Kansas. You're saying even though the activity occurred before the patent came into being or came into existence, it was that activity that enabled them after the patent was in existence to infringe. Is that basically the thrust of it? Correct, Your Honor. Because we had applied for the patent. It was not yet public. The patent didn't, the application didn't publish until after the access. And at that time, Allen was creating the infringing product, the Zebra Zaps product. The district court seemingly conflated the NDA with the EULA, and it rejected Nexlern's jurisdictional argument based on the EULA by saying this is at appendix 17, Allen's actions under the NDA cannot serve as a basis for a specific personal jurisdiction over its patent infringement claim because the party's obligations terminated before the patent issue. But the court did not then go on to analyze or explain why the EULA wouldn't govern this situation, and the EULA does not have any sort of temporal limitation. What is exactly the thrust of the EULA? The EULA governs. I know it stands for End Use License Agreement, but what was the thinking there? What was the concept? Among other things, Nexlern didn't want somebody to gain access and then just copy its IP, and if something happened arising out of the accessing of the trial program, there'd be rules governing the violation of the EULA. But you didn't file a claim for violation of the EULA. We did not, Your Honor. You didn't file a breach of contract claim or anything like that. We filed a breach of contract claim under the NDA, which the court didn't address because declining to exercise supplemental jurisdiction. We did claim a breach of the EULA, but we didn't... Is there not diversity jurisdiction here? There is diversity jurisdiction here. But we say that it was the activity surrounding the EULA that at a minimum subjected Allen to specific jurisdiction when they agreed that any sort of misuse, violation, dispute related to the agreement or the product, our product, which they were copying... But the dispute isn't about your product. It's about their product. Correct. But our product is covered by our patent, the 522 patent. Doesn't that mean you have a right under the agreement to sue for breach of that agreement and any suit for that kind of breach has to be in Kansas? Because I don't see anything in an infringement suit that necessarily directly implicates this agreement or your product. Clearly they're related. If they're copying specific features of our product and hence eventually infringing our patent that eventually issues, we maintain that it's completely connected. And that if the mere fact that the patent hadn't issued yet doesn't mean that that activity... Let's say they got on a plane and went to Wichita, Kansas to view our product and then copy our product functionality. The mere fact that they didn't do that but instead accessed it through our servers by getting an authorization code from our people in Wichita, Kansas and agreeing to this... But doesn't the Supreme Court in Walden and in many of the recent specific jurisdiction cases say the only contacts you can look at for minimum contacts for specific jurisdiction have to give rise to the claim you're asserting? Contacts that give rise to that claim. A claim for infringement, I'm sorry, but no activity that is undertaken prior to the patent's issuance could give rise to a claim for infringement. No activity. If you don't have a property right, you don't have a patent, then nothing they're doing can give rise, which is the Supreme Court's language, to the claim you're asserting, which is infringement. So I just don't know how I could morph those early activities under which they gained access before you had a patent into fitting within the rubric the Supreme Court has articulated for what you're allowed to look at for the purposes of minimum contact. We respectfully submit that pre-issuance activity should be part of the calculus, particularly when we're alleging, for example, copying. But do you have a case that would... Well, you're alleging copying, but copying isn't infringement if you don't have a patent. So do you have some case that would indicate that post Walden, post the recent Supreme Court decisions, I mean, I can quote what they say, that the minimum context must arise out of or relate to the activities that you're claiming are the infringing activities. So I just... Well, but I don't think that that analysis would force one to put blinders on as to what the activity was that led up to the infringement of the patent. We can't artificially assume that... But none of those acts were infringing acts, were they? Not at the time. But they were certainly in violation of the NDA and the EULA. But we're not being asked to decide whether there's specific jurisdiction for a breach of contract claim. We're being asked on appeal to review whether there's specific jurisdiction for a patent claim. Correct. And we maintain that pre-issuance activity is relevant to this particular situation where they copied the product... Do you have any case that you could point me to? And it doesn't even have to be a patent case. Any case at all that would justify, in any regional circuit, looking beforehand like that at activities which would not themselves have been relevant to the cause of action because the property right didn't exist. It's just a very unusual set of circumstances. It is, Your Honour. But it's a continuum of tortuous conduct that eventually... But none of that is tortuous conduct. A continuum of tortuous conduct, that language implies that there was tortuous conduct throughout the continuum. Actually, none of that conduct was tortuous because you didn't have a patent yet. But... For example, breach of the NDA, that could be trade secret misappropriation. He didn't file trade secrets. We did not. But we did maintain that what they did was improper and that conduct did continue. There was a continuum because they made the product and they began selling it. We also maintained that there was general jurisdiction because of, among other things, the interactive website with a specific call-down menu item for Kansas, the contacts into Kansas, other than the contacts, in addition to the contacts that they made to us, sales into Kansas. And we maintained that under this court's opinion in Trinitech versus Pedra promotional products, at a minimum we've made a prima facie showing of jurisdiction to defeat a motion to dismiss and at a minimum cause a remand for jurisdictional discovery because there's been no discovery as to how many times Kansas residents have, for example, interacted with their interactive website. In Trinitech, the court remanded the case to address those issues. The Trinitech court cited the Zippo manufacturing case and the Zippo manufacturing case as a case where the court held that the interactive menu alone, the website alone, was sufficient to establish personal jurisdiction. The court didn't actually accept or reject that analysis but did say that the record was silent as to how frequently those features are used or indeed whether any district residents have ever actually used Pedra's website to transact business. Can I just, as a procedural matter, I just want to make sure that I do have your appeal in the proper context. Your entire argument appears on page 10 through the rest of your brief and every single heading that I'm looking at is related to specific jurisdiction and whether you've established whether specific jurisdiction exists. Look, I often overlook things, so is there a place in your brief where you separately argued that you were appealing a decision on general jurisdiction because every single header in your brief uses the word specific jurisdiction and those are two different legal concepts and so by no means do I want to slight you if you've also made the alternative on general jurisdiction but I just don't see it. Well, Your Honor, at pages 13 through 16 we address general jurisdiction albeit through an improperly worded headline or inaccurately worded title. Oh, so when you say Allen's Other Kansas Contacts also supports specific jurisdiction? That is a typo. In that section we address Allen's Other Kansas Contacts and its interactive website and the Trintec case where this court remanded the case for jurisdictional discovery as to, for example, how many residents actually interacted with that website. Okay, well you've exhausted all of your time for today including your rebuttal time. I'll give you a couple minutes back but let's hear from opposing counsel. Good morning, Your Honors. Let me just address that last point first. There's no allegation here of general jurisdiction. If you look at appendix page APPX7 the court made it clear and they made it clear below the court says at the bottom of the page here Nexlern does not allege general jurisdiction but rather that Allen had minimum contacts with Kansas based on specific jurisdiction. That's the only allegation here. So Your Honors are exactly right. As I understand the law they have to show that the specific activities directed into Kansas gave rise to the cause of action for patent infringement and they can't do that. They could have alleged an action for breach of the EULA. They did not do that. They probably could not have. They have an action for a breach of the NDA but by its terms it expired in 2011. The patent application here by the way that led to this patent was published in 2009. So it's hard to even understand how there could be a breach of any of those agreements. Anything that was used in our product which wasn't by the way launched until 2011. If copied that information was in the public domain by that point. It was all in the published patent application. So those causes of actions probably don't even exist. And as for the patent infringement action under the EULA based on the questions I heard here and as I understand it as well the EULA simply says that any cause of action for breach of this agreement i.e. the EULA or relating to the product and the product is not my client's product the product is the Simrider product it's the patented product must be brought. There is no cause of action here relating to the Simrider product. Products don't infringe products as we all know. Only patents are infringed by products. Nor is there any action here for breach of the EULA. So there is no basis here for specific jurisdiction over our client in Kansas. I would also... What about the fact that you your client sent a free trial of the product to an individual in the state of Kansas? Firstly I don't think we sent a free trial of the product. We sent email blasts out to anybody who was on our lead database. And the people who were on our lead database happened to be two employees of NextLearn. No, there's a separate allegation related to a former NextLearn employee contacting Mr. Allen because he tried to purchase the software and said he couldn't get his credit card to go through and then Mr. Allen said we'll give you a free trial of the product and sent it to him. Well, I think the law is also clear in that regard. Again, that was an employee of NextLearn. And that attempted sale was done obviously at the request of the plaintiff in this action. Why does that matter? Well, because there are lots of cases that say that for purposes of jurisdiction you can't manufacture jurisdiction yourself by having your own employees reach out to the other side. Well, no. Each of those cases say the employees reaching out to the other side constitutes a unilateral action by the person trying to manufacture jurisdiction. None of those cases say that if Mr. Allen responds and is willing to make the sale that it's still a unilateral action. Every one of those cases uses the words unilateral action by one party. Can't create specific jurisdiction. But once Mr. Allen engages in a dialogue with the person and agrees to make a sale or offer a free version or whatever, it's no longer a unilateral action as those cases call it. So I don't know why they would apply. I'm not sure that's exactly right. If I remember those cases, in fact, in some of those cases the sale actually took place. Somebody reached out for a sale from the plaintiff company. The product was in fact sold into the jurisdiction and it was that sale that was alleged to be the basis for the jurisdiction and ultimately rejected. Right. Well, in those cases and there are definitely Federal Circuit cases that have held a single sale alone to a jurisdiction is not really sufficient to be minimum context to avail yourself of a jurisdiction. And you're absolutely right that your recollection is in those cases I found those single sales were often precipitated by a request from somebody associated with the patentee. But I really read those cases as focusing more on the single sales. Suppose that 100 different NextLearn employees, 100 different ones, all went on Mr. Allen's interactive website. All of them live in Kansas. All of them place orders and Mr. Allen ships them 100 different copies of his software. Shipping is kind of irrelevant because everybody downloads now so I realize there's no old-fashioned AOL disk that goes through the mail. But in any event, you understand the point. Mr. Allen sends to the state of Kansas to 100 different individuals his products. He makes 100 different sales to individuals who live in Kansas. Are you telling me that the law stands for the proposition that if those people were all employed by the patentee and thus those sales were precipitated by the patentee that they're all irrelevant for jurisdictional purposes? Is that the way you view the law? Your Honor, I don't view the law hypothetically. I'm viewing the law based on the facts that are in this case. I'm only addressing these facts. I'm not a jurist. I don't decide on a patent policy. But it seems to me that a single request from a single NextLearn employee which results in a trial and again, I don't have the fact in front of me, I'm not even sure that took place after or before the patent issue. It took place after. Assuming it took place after, a self-inflicted wound like that, as the courts have put it, is not a sufficient basis to confer jurisdiction here over our client in Kansas. You agree it would be a different case if it were 100 different such sales? It could be a different case. I wouldn't concede it. I'd have to research the law more and see if there are cases that talk about multiple attempts by the plaintiff to establish jurisdiction in that manner. But I do see, obviously, there's a clear factual distinction there that might lead, in fact, to a different legal result. Anything further? No, I would just mention to the Court that we had a cross appeal here. Obviously, it's moot if the Court denies, agrees, and affirms the denial of jurisdiction based on Section 101. I know it was not considered below, but as I read the law, we at least had the right to raise it on appeal. And I just want to mention that that's before the Court, and we think the patent is clearly invalid in view of the Supreme Court's Alice decision. Thank you, Your Honor. Okay, thank you very much. We'll give you two minutes of rebuttal time. Briefly, on the last point, Your Honor, on the cross appeal, this Court has identified the procedural posture of this situation as being distinctive in the Accenture Global Sales versus Guidewire case. The Court distinguished ultramercial and pointed to the fact that this was on a motion to dismiss, and in this situation, the complaint and the patent must themselves show clear and convincing evidence of a disembodied abstract idea. Here, the complaint states and shows that this was a inventive advance over what existed in this field, and in the Alice case, the Court said more is required than well-understood routine conventional activity. The complaint at page 36 of the appendix, paragraph 2, 2009-2010, this product won the excellence in technology gold award for best  in technology for game or simulation authoring, and also in 2009, it won the Harvard Business Publishing Partner of the Year award based on SimWriter. So what's in the record establishes that this was a major advance in the industry, and hence it's patent-eligible. Thank you. You reserve two minutes on cross-appeal. Is there anything you'd like to add? No. Okay. We thank both counsel. The case is taken under submission.